In re CHASE MANHATTAN BANK, N.A., Fidelity International Bank and Girard International Bank, Plaintiffs,

v.

Rudolph FRENVILLE, Sr. and Rudolph Frenville, Jr., Defendants.

Bankruptcy No. 80–02589.
Adv. No. 82–0123.

United States Bankruptcy Court, D. New Jersey.

Dec. 9, 1986.

Clapp & Eisenberg by William S. Katchen, Newark, N.J., for plaintiffs.

Lehman & Wasserman by Steven Z. Jurista, Millburn, for defendants.

## OPINION

WILLIAM H. GINDIN, Bankruptcy Judge.

The within matter arises as a result of a suit by Chase Manhattan Bank, N.A., Fidelity International Bank and Girard International Bank seeking a judgment denying the debtor a discharge pursuant to the provisions of 11 U.S.C. § 727. The cause is based upon the conduct of the debtors and the intentional withholding of information material to the administration of the estate, the failure to provide information, the failure to permit the plaintiffs and the trustee access to recorded information, and other offenses relating to the debtors' financial affairs and property of the estate of the debtors and of their corporate affiliates.

The plaintiffs further seek a determination by this Court that their individual debts are not dischargeable, based upon actual fraud, false representations and false pretenses in violation of 11 U.S.C. § 523(a)(2)(A) and by the publication of false financial statements in violation of 11 U.S.C. § 523(a)(2)(B)(i) through (v).

The debts sought to be declared non-dischargeable arise by reason of personal guarantees by the individual debtors of certain corporate obligations of M. Frenville Co., Inc. Defendants have filed an answer setting forth a general denial of all allegations and an assertion that they will stand mute and leave the plaintiffs to their proofs.

In response, plaintiffs have filed a notice of motion for summary judgment pursuant to Fed.R.Civ.P. 56 (incorporated into the Bankruptcy Rules as Rule 7056). The plaintiffs have filed extensive affidavits by corporate officers setting forth a scheme of fraud and deception in support of each of the allegations of the complaint. Without reviewing the details of these allegations, for the purposes of this opinion, the Court finds that such allegations amply make out a prima facie case in support of the contentions of the three plaintiffs. If true, the affidavits set forth significant instances of the refusal of the defendants to supply

information with respect to the bankrupt estates and justify the denial of discharge. The plaintiffs further demonstrate clearly the falsification of financial statements by the defendants in violation of § 523(a)(2)(B). In addition, a clear case of actual fraud is set forth in the affidavit of the bank officer. At oral argument, the attorney for the debtors conceded that plaintiff had made out a prima facie case under § 523.

The defendants have not responded to the allegations in the complaint nor to the assertions in the motion for summary judgment. Instead they have claimed that they are protected by the Fifth Amendment to the Constitution of the United States for to answer the allegations would tend to incriminate them. This matter was originally heard by the late Hon. D. Joseph DeVito, a judge of this Court, who unfortunately passed away before he was able to render a decision. According to the record, he held a hearing *in camera* in order to determine whether the fear of the defendants that such statements would in fact incriminate them was real or imagined. Pursuant to the directions of *Hoffman v. U.S.*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951) Judge DeVito made a determination concerning the right of the defendants to assert the privilege. The record is unclear concerning Judge DeVito's determination and rather than speculate this Court will, for the purposes of this opinion, hold that in terms of the requirements of the privilege against self incrimination the defendants are completely justified in their refusal to testify.

Thus the issue before the Court is a narrow one. The question is whether or not the defendants may, by the assertion of a Fifth Amendment privilege, stand mute in an application for summary judgment brought to determine the right of the debtors to a discharge as well as the dischargeability of specific debts.

■ Initially, it must be pointed out that the argument of the debtors that the remedy of summary judgment is a particularly drastic one and should not be imposed upon

a case such as this is pure sophistry. The law is clear. Summary judgment should be issued where there is no genuine issue concerning a material fact. *Goodman v. Mead Johnson* 534 F.2d 566 (3d Cir., 1976), *Cert. den.* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). In recent years it has become fashionable to indicate that this circuit is one in which the burdens upon the moving party were even greater because of the characterization of summary judgment as a "drastic remedy". *Hollinger v. Wagner Min. Equipment Co.*, 667 F.2d 402 (3d Cir., 1981), *Matter of Janoff* 54 B.R. 741 (Bkrtcy.N.J.1985). If there ever was a distinction between this and other circuits such a distinction has been put to rest by the United States Supreme Court in *Anderson v. Liberty Lobby* 477 U.S. ——, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the motion is brought, the responding party is required to come forth with proofs sufficient to show that there is a genuine issue as to a material fact. The rule itself requires response. *Steaks Unlimited, Inc. v. Deaner*, 623 F.2d 264, 276 (3rd Cir., 1980)

The rule however contains an exception. Fed.R.Civ.P. 56(f) provides:

Should it appear from the affidavits of a party opposing the motion that he cannot for reason stated present by affidavit facts essential to justify his opposition, the Court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Thus the assertion of the privilege against self incrimination permits the Court to refuse the judgment if it can be shown that the assertion of the privilege is justified and that the privilege applies to matters material to the matters before the Court.

In dealing with the privilege against self incrimination, one must first determine what effect that privilege has. It is not a privilege which broadly permits a witness (either in oral testimony or by affidavit) to hide behind privilege in order to avoid nor-

mal consequences of the witness's act. It simply means that testimony elicited in a collateral proceeding may not be used against him in a criminal proceeding. If the witness is in danger that such evidence would tend to incriminate him, he has the right to assert the privilege.

In the context of a bankruptcy case, the United States Supreme Court originally drew a distinction based upon the fact that the debtor sought a privilege and was not asserting a right. *In Re Dresser*, 146 F. 383, 16 Am.B.R. 561 (C.C.A., 2, 1905). Thus, under the old bankruptcy act, if a bankrupt sought a discharge, he was compelled by the provisions of the act to cooperate. It was a privilege and not a right. *Kaufman v. Hurwitz*, 176 F.2d 210 (4th Cir., 1949) (Bankruptcy Act §§ 14c & 14c(6)).

While later Supreme Court law seemed to go in the direction of broadening the privilege and lessening its penalty, the thrust of the privilege is still measured in terms of criminal consequences. In *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) the United States Supreme Court held that a police officer who was compelled to answer questions in the course of a criminal investigation, could not be made subject to the later use of such statements in a criminal proceeding. The Court relied on the fact that his job was threatened by the invocation of the New Jersey Forfeiture of Office statute. Similarily, in *Spevack v. Klein*, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967), decided on the same day, an attorney was held to be permitted to assert the privilege in the course of a disciplinary proceeding. The attorney was disbarred because he asserted the privilege and the Court held that such a "penalty" was too "costly". No mention was made of a civil monetary loss. 385 U.S. 515, 87 S.Ct. 629, 17 L.Ed.2d 577.

■ Mindful of the trend in the Supreme Court, Congress carefully examined the problem when it considered the passage of the Bankruptcy Code (11 U.S.C. § 101 et seq.) In 11 U.S.C. § 727(a)(6) the failure to answer an inquiry, is in itself grounds for the denial of a discharge. In 11 U.S.C. § 727(a)(6)(B) the drafters provided that the only time a discharge could be denied on such ground was if immunity had been granted. Furthermore, the code specifically provides in 11 U.S.C. § 344 that immunity could be granted for purposes of submission to examination.

A number of distinctions must be made between the law as it appears and the facts of the instant case. In the first place, it is clear that prior to the enactment of the Bankruptcy Code, assertion of the privilege against self incrimination was not available to prevent a determination that the debtor was not entitled to a discharge or a determination that a particular debt was not dischargeable. *Matter of Harris* 221 U.S. 274, 31 S.Ct. 557, 55 L.Ed. 732 (1911) and *McCarthy v. Arndstein*, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924). 1a *Collier on Bankruptcy* 1017, ¶ 7.21[2] (14th edition Matthew Bender New York, 1978). In the above referenced section of the Bankruptcy Code, Congress clearly dealt with the problem with respect to the grant or denial of a discharge to the debtor. 4 *Collier on Bankruptcy* 727–168 · ¶ 727.09[3] (15th edition Matthew Bender New York, 1986). This section, however, refers only to the specific limitation of the statute wherein it states that a discharge cannot be denied for failure to answer a material question if the privilege has been *properly* invoked.

In the instant case, the failure to respond to the question is not grounds upon which the discharge is sought to be denied. In fact, the allegations with respect to discharge have to do with the destruction or withholding of records, the failure to explain what happened to assets, the application of loan proceeds and the like. Each of the individual allegations is clearly and thoroughly documented. The consequence of the invocation of the privilege is the denial of the discharge and the responsibility for the payment of money which would be due but for the request of the debtor for *relief*. The result is not a criminal prosecu-

tion, nor is it the loss of a public or quasi-public office.

■ Even if the result of the invocation of the privilege is not a denial of the discharge, it is clear that Congress did not authorize the use of the privilege with respect to a claim concerning the dischargeability of a specific debt. Nowhere in 11 U.S.C. § 523 does the privilege arise. As a matter of logic and of statutory construction it is clear that where a statute is revised, the legislature knew which sections it was revising and which sections it was leaving subject to prior law. See 1a Singer, *Sutherland on Statutory Construction* 481 § 28210. Thus, at the very least, the precode law prohibiting the debtor from using the privilege with respect to the dischargeability of a specific debt under § 523 is still in effect.

It is important to note that in the cases asserting the breadth and importance of the privilege against self incrimination, the actions involved are actions *against* the person asserting the privilege. Conceptually, the position of the Court in *In Re Dresser, supra,* still applies, for in fact, debtors have affirmatively requested relief. It is difficult to understand how a debtor can ask for relief by way of a discharge of all debts and further by way of the discharge of specific debts and continue to assert his right to avoid doing those acts which are necessary to justify the relief which he seeks. To use the colloquial expression "you can't have it both ways".

The case of *National Acceptance Co. of America v. Bathalter,* 705 F.2d 924 (7th Cir., 1983) supports the aforesaid proposition. The factual pattern of that case differs from the instant one, for there the defendant raised a claim of privilege and the plaintiff, in its demand for judgment, sought to have the failure to respond deemed an admission and as such become affirmative proof. The Court there determined that such an admission would not serve as *affirmative* proof but went on to say that "plaintiff should have been put to its proof, either by way of evidentiary support for a motion for summary judgment or at trial". 705 F.2d 932. It is just that particular method which the plaintiff seeks to follow by fully supporting its motion for summary judgment with competent material evidence. All that the cases hold is that "a plaintiff may not rest a judgment on defendant's constitutionally protected silence *alone*" (emphasis added). 705 F.2d 932.

■ The Court may, however, draw an adverse inference in a civil matter where the party refuses to "testify in response to probative evidence offered against" it. *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810, 821 (1976). In the instant case, such an inference of inability to deny the allegations must be drawn from the pleadings.

■ Having determined that the evidence set forth in the moving papers constitutes a prima facie case both as to dischargeability of the particular debts and as to the entitlement of the debtor of a discharge, the Court therefore determines:

1. The individual debts of the plaintiffs are declared to be nondischargeable in the amounts set forth.

2. The discharge of the debtor is hereby denied.

Recognizing that the debtor has proceeded in good faith to assert the privilege and further recognizing that the debtors may reconsider their determination to invoke the privilege against self incrimination, judgment shall be withheld for a period of two weeks during which time the debtors may file appropriate responsive papers to the motion for summary judgment. If such papers are filed, the Court will set the matter down for hearing on such motion and reconsider its determination, in light of the proofs.

The attorney for the plaintiffs shall submit an order consistent with this opinion.