In re: Clyde S. BARTLETT, Jr., Debtor.

**GENERAL MOTORS ACCEPTANCE CORP., Plaintiff,**

v.

**Clyde S. BARTLETT, Jr., Defendant.**

Bankruptcy No. 91–11691.
Adv. No. 91–1166.

United States Bankruptcy Court,
D. New Hampshire.

May 14, 1993.

Jennifer Rood, Backus, Meyer & Solomon, Manchester, NH, Andrew Z. Schwartz, Vincent J. Canzoneri, Foley, Hoag & Eliot, Boston, MA, for plaintiff.

Andru H. Volinsky, Shaheen, Cappiello, Stein & Gordon, Concord, NH, for defendant.

Jeffery Schreiber, Trustee.

### MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

This adversary proceeding came on for hearing before the Court on December 7, 1993 for oral argument on plaintiff's Motion for Summary Judgment and defendant's Objection thereto, concerning plaintiff's Amended Complaint to Determine Dischargeability of Debt.[1]  For the reasons

---

1.  Note: Plaintiff's Complaint was "refined" by an Amended Complaint filed on July 22, 1992.

set forth below, the Court denies plaintiff's Motion for Summary Judgment.

Plaintiff, General Motors Acceptance Corporation ("GMAC"), a creditor of the debtor-defendant, Clyde S. Bartlett, Jr. ("Bartlett"), seeks summary judgment on Counts I, III, IV, and V of its Amended Complaint pursuant to sections 523(a)(2)(A), (a)(4), and (a)(6) of the Bankruptcy Code. Plaintiff requests a determination of non-dischargeability of its claim of more than one million dollars, plus liability, due to debtor's alleged engagement in various alleged fraudulent financing transactions.[2]

Specifically, plaintiff claims that certain debts of Bartlett to GMAC are nondischargeable because they arise from the tortious conversion, fraudulent diversion and/or embezzlement of funds that GMAC had advanced as secured "floor plan" loans to Bartlett's car dealership, Clyde Bartlett Buick–BMW, Inc. (the "dealership"), which is also in bankruptcy.[3] Plaintiff claims that under the so-called "floor plan" financing arrangement between GMAC and the dealership, GMAC made advances to the dealership to fund the dealership's purchases of cars for its inventory. Plaintiff states that until each car was sold, the dealership was to keep the car on its lot, physically available to GMAC as collateral, and upon sale of each car the dealership was to repay GMAC the amount advanced for that car. Instead, plaintiff avers that Bartlett used the dealership to convert and embezzle GMAC funds by retaining sale proceeds that were due to GMAC on account of cars that GMAC had financed. Plaintiff further claims that Bartlett diverted and embezzled GMAC funds by failing to purchase cars with funds advanced by GMAC for that purpose.

Plaintiff requests that the Court hold Bartlett personally liable for these debts of the dealership, and further requests multiple damages and attorneys fees pursuant to N.H. RSA 358–A:2 and 10. Plaintiff has filed several documents, including affidavits and deposition transcripts, in support of its motion for summary judgment.

Defendant/debtor Bartlett objects, asserting that there are several issues of material fact concerning the debtor's state of mind and intent, and concerning the reasonableness of GMAC's conduct regarding the transactions at issue. Defendant alleges that GMAC knowingly and purposefully allowed the dealership to utilize "out of trust" funds as working capital to keep the dealership open. Defendant further alleges that the conduct of GMAC in continuing to offer substantial "floor plan" financing to the dealership when it was aware of the declining nature of the business is a material issue of fact to be considered in this proceeding. Defendant makes various factual assertions and offers several documentary examples that purportedly substantiate its allegations that GMAC knowingly allowed the dealership to continue with its unusual financing transactions. Defendant maintains that GMAC's conduct was not reasonable and in good faith, and that GMAC is therefore not now entitled to have its claim excepted from discharge.

Plaintiff responds that defendant's objection to summary judgment must fail because the documents defendant relies upon do not represent admissible evidence, and because the inferences defendant's attorney seeks to draw from those documents do not give rise to genuine issues of material fact. More particularly, citing Rule 56 of the Federal Rules of Civil Procedure, plaintiff asserts that defendant cannot de-

---

I hesitate to say "replaced" because the Amended Complaint is not a separate pleading—it is attached as Exhibit A to plaintiff's Motion to Amend Complaint.

**2.** Specifically, GMAC claims debtor conducted three types of unlawful transactions:
(1) 16 BMW sales out-of-trust (conversion units) in violation of 523(a)(4) and (a)(6) (embezzlement and willful and malicious injury to property of another);

(2) 9 BMW outright fraud financing transactions (never purchased) in violation of 523(a)(2)(A) and (a)(4) (obtaining credit by fraud or false pretenses and embezzlement); and
(3) 7 "twice financed" BMW transactions in violation of 523(a)(2)(A) and (a)(4) (obtaining credit by fraud or false pretenses and embezzlement).

**3.** In re: Clyde Bartlett Buick–BMW, Inc., BK No. 91–10385, Chapter 7 (D.N.H.).

feat a motion for summary judgment without providing documents or other evidence that contradicts the factual assertions made by GMAC, and that defendant's use of selective out-of-court statements reflected in documents provided by GMAC is insufficient.[4]

Further, plaintiff contends that even if the Court finds that there are material issues of fact concerning the debtor's intent and GMAC's conduct, the Court should still grant summary judgment as to Count V of the Amended Complaint, concerning embezzlement, because that claim requires no showing of malice or other state of mind, and because defendant failed to contest the embezzlement count in any way in either his objection to the motion for summary judgment or in his memorandum of law regarding same. Plaintiff states that "Congress has stated that § 523(a)(4) embezzlement requires no proof of any 'intent to inflict injury'." *Quoting* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 364, reprinted in 1978 U.S.Cong. & Admin.News 5787, 5963, 6320.

Plaintiff also maintains that, by not disputing certain assertions made in plaintiff's motion for summary judgment, defendant has effectively conceded those points. Those two assertions are: (1) that summary judgment may be granted even where fraud is alleged; and (2) that the Court may draw an adverse inference from the defendant's exercise of his Fifth Amendment privilege against self-incrimination.

### Discussion

■ As plaintiff itself has recognized, summary judgment is granted sparingly where, as here, issues of the defendant's intent and knowledge are raised. *See, e.g., Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 109 (1st Cir.1988). However, in certain limited circumstances courts have determined that "summary judgment can be appropriately entered even when elusive concepts such as motive or intent are in-

volved." *Mesnick v. General Electric Co.*, 950 F.2d 816, 822 (1st Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992); *see also Local 48 v. United Brotherhood of Carpenters & Joiners*, 920 F.2d 1047, 1051 (1st Cir.1990); *Griggs–Ryan v. Smith*, 904 F.2d 112, 116 (1st Cir.1990); *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

■ In the bankruptcy context, summary judgment has been granted in adversary matters seeking determinations of nondischargeability where the defendant's fraudulent intent had to be proven as an essential element of a section 523(a)(2) claim. *See Matter of Metzgar*, 127 B.R. 708, 712 (Bankr.M.D.Fla.1991) (summary judgment can be entered as a matter of law even though debtors invoked their Fifth Amendment privilege against self-incrimination, where debtors failed to file any documents establishing whether invocation of Fifth Amendment was justified); *In re Tipple*, 80 B.R. 93, 96 (Bankr.N.D.Ohio 1987); *In re Todd*, 47 B.R. 18, 21 (Bankr. N.D.Miss.1984). Plaintiff contends that in this instance summary judgment is warranted, because "the documentary and other evidence supporting GMAC's case is so overwhelming". Plaintiff's Memorandum, p. 5.

The *Metzgar* case is distinguished from the proceeding at bar, because in this matter the debtor has provided sufficient evidence—notwithstanding his invocation of his Fifth Amendment privilege—to withstand a summary judgment attack. Defendant did this primarily by relying on the documents provided by the plaintiff to show that there are several issues concerning the plaintiff's conduct and whether or not plaintiff condoned defendant's actions. Again, the *Tipple* case is not apposite, because its holding was predominantly premised upon the failure of the debtors to raise affirmative defenses in their answer to the complaint and the debtors' failure to re-

---

4. Defendant had also by separate pleading moved to strike all or part of two of the affidavits upon which plaintiff relies, which motion was denied by Order of this Court dated December 7, 1992. Defendant requested reconsideration of the denial of its motion, which reconsideration was denied by Order dated January 23, 1993.

spond in any way to the motion for summary judgment. In *Tipple*, the bankruptcy court explained:

> The Court recognizes that Summary Judgment is not typically granted against the Debtor under 523(a)(2). In most cases there are questions of fact which must be resolved by way of a Hearing. However, in this case it does not appear that the Debtor could present any evidence, not encompassed in an affirmative defense, which would alter the only reasonable inference to be drawn from the facts admitted to in the Defendant's Answer.

*Tipple*, at 96.

Plaintiff requests the Court to draw an adverse, or negative, inference from the defendant's invocation of his Fifth Amendment privilege against self-incrimination, and to deem all matters to which defendant claims the Fifth as admitted for purposes of summary disposition. Plaintiff cites several cases and Rule 36(a) of the Federal Rules of Civil Procedure for this proposition.

■■■ The United States Supreme Court has observed that "the prevailing rule [is that] the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment 'does not preclude the inference where the privilege is claimed by a party to a civil cause.'" *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976), *quoting* 8 J. Wigmore, *Evidence* 439 (McNaughton rev.1961) (emphasis omitted). Moreover, adverse inferences may be

drawn at the summary judgment stage as well as at trial. *See Young Sik Woo v. Glantz*, 99 F.R.D. 651, 653 (D.R.I.1983); *Matter of Metzgar*, 127 B.R. 708 (Bankr. M.D.Fla.1991).

■■■ Although I recognize that the drawing of adverse inferences from a person's exercise of their Fifth Amendment privilege is an established principle in civil law, I do not believe it is appropriate to make a summary ruling of this bankruptcy matter at this juncture on that basis. I am hesitant to give summary weight to the defendant's exercise of his Fifth Amendment privilege against self-incrimination by taking an adverse inference therefrom in this procedural posture, i.e. where the Court would grant summary judgment, thereby denying the debtor bankruptcy relief, solely because the debtor invoked his constitutional rights.[5]

■■■ In addition, where, as here, fraud is a primary allegation of the complaint, it is very difficult to say that there is no issue as to the defendant/debtor's intent. And where there is an issue as to a person's intent, it is very difficult to determine that issue in a summary manner without the benefit of a trial where the Court can weigh the credibility of the defendant and other witnesses or parties to the proceeding. In this case, the issues of intent of the defendant/debtor regarding the alleged fraudulent acts, as well as the issue of intent or actions by the plaintiff in allegedly condoning defendant's acts, constitute genuine material issues of fact that should be and will be more appropriately determined at the trial stage of this proceeding, rather than in a summary manner.

---

5. This Court has not ever ruled upon whether a voluntary debtor can be denied bankruptcy relief because he has invoked the Fifth Amendment and thereby denied information to his creditors. In *In re Fairbanks*, 135 B.R. 717 (Bankr.D.N.H.1991), this Court ruled in part that an involuntary debtor's invocation of the Fifth Amendment does not affect his attorney-client privilege, i.e. he is still protected by the privilege. I further note that GMAC did not raise the Fifth Amendment issue in its motion for summary judgment or at the hearing thereon.

Although I could *sua sponte* address the constitutional issue posed above, I have no way of knowing whether, by the time of trial, the criminal charges may have been dropped or the debtor/defendant may have been acquitted or the debtor/defendant may have pleaded guilty or the debtor/defendant may waive his Fifth Amendment rights for other reasons, such that his invocation of the Fifth Amendment will no longer be necessary. Therefore I am not going to perhaps needlessly address a constitutional issue at this juncture that may disappear from this case due to future events and circumstances.

Plaintiff also contends that, upon GMAC's showing that Bartlett participated in the allegedly tortious acts that gave rise to the debts, or upon a showing that Bartlett had "knowledge amounting to acquiescence" in those acts, GMAC is entitled to multiple damages and attorneys fees under the New Hampshire Consumer Protection Act, N.H. RSA 358–A. Plaintiff cites *New England Box Co. v. Gilbert*, 100 N.H. 257, 123 A.2d 833 (1956) for this proposition. This claim, like the others discussed above, involves a determination of the debtor's intent and/or actions concerning certain transactions at the time they occurred, which I believe has not been definitively established by the pleadings filed by GMAC such as to warrant summary judgment.

### Conclusion

Based on the foregoing, this Court concludes that summary judgment is not appropriate in this matter. Defendant's motion for summary judgment will be denied, and this matter will be set for a continued pretrial forthwith.

A separate Order in accordance with this opinion shall be entered contemporaneously herewith.