**In re Eugene SCHOENLEIN, Debtor.**

**ITT FINANCIAL SERVICES, Plaintiff,**

**v.**

**Eugene SCHOENLEIN, Defendant.**

**Bankruptcy No. 91–31600.**
**Adv. No. 91–3374.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

July 15, 1993.

John C. Intagliata, Toledo, OH, for plaintiff.

Nancy S. Schramski, Lima, OH, for defendant.

## OPINION AND ORDER DISCHARGING DEBT AND DISMISSING COMPLAINT

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter is before the Court on ITT Financial Services' (ITT) complaint to except the debt of Eugene Schoenlein (the "Debtor") from discharge under 11 U.S.C. § 523(a)(2). Upon consideration of the evidence adduced at trial and the oral arguments of the parties, the Court finds that ITT's complaint to except its loan to Debtor from discharge under 11 U.S.C. § 523(a)(2) is not well taken and should be dismissed.

### FACTS

The Debtor filed a voluntary petition under Chapter 7 of title 11 on April 22, 1991. Thereafter, on September 10, 1991, ITT filed the instant action seeking to have this Court declare a debt from Debtor to ITT of $6,364.95 nondischargeable under 11 U.S.C. § 523.

The debt owed to ITT arises from a promissory note and security agreement dated February 14, 1991 (the "Agreement") which purports to grant ITT a security interest in items including a television, a VCR, rifles, a stereo, "kids bikes" and a riding mower. See Joint Exhibit 1, Disclosure Statement, Note and Security Agreement, Section c. The Agreement also granted ITT a security interest in certain "Mechanics Tools" and "Misc. Tools, Air Comp.". See Joint Exhibit 1. These two items were valued at $4,000 and $20,000, respectively, in the Agreement. See Joint Exhibit 1. The Agreement represented a refinancing of previous notes between Debtor and ITT which listed substantially the same items as collateral. See Defendant's Exhibits A–D.

The Debtor testified that ITT had contacted him a number of times to offer him loans. According to the Debtor, he would suggest items which could be used as collateral for a loan and ITT would provide him with the values for these items and type the necessary loan documents. Debtor would then sign the loan documents and obtain the loan.

The Debtor testified that he never owned tools valued at more than $400–$500 for use in his home workshop. The Debtor stated that his failure to notice errors in the values for the items listed as "Mechanics Tools" of $4,000 and "Misc. Tools, Air Comp." of $20,000 on the Agreement was an oversight, despite the fact that this error existed on previous security agreements between the Debtor and ITT.

The Debtor also testified that he may have expended up to $15,000 for tools used at work ("Work Tools") in the past 16 years and that these tools are presently worth between $10,000 and $15,000. However, Debtor testified that the Work Tools never served as collateral for the loans which he obtained from ITT. This testimony was not rebutted by ITT.

The Debtor's wife testified that though she handled the family's finances, she did not question the values listed for "Mechanics Tools" and "Misc. Tools, Air Comp." on the Agreement.

Donald Meadows ("Meadows"), ITT's bankruptcy representative, testified that he was present at Debtor's § 341 meeting and discussed the items listed on the Agreement with the Debtor. Meadows had not met the Debtor prior to the § 341 meeting. Meadows stated at trial that a post-petition review of the Agreement led him to the conclusion that ITT was "oversecured" and would have had no concern for the adequacy of its collateral at the time that ITT made the loan.

David Grunden, formerly employed by ITT as an assistant manager, testified that he visited Debtor's home in the Fall of 1991 and again in the Spring of 1992 to inventory the collateral listed on the Agreement. Grunden testified that he observed items including the television, VCR, two guns, and tools which the Debtor had allegedly valued at approximately $400–$500.

## Exception of Debt From Discharge Under 11 U.S.C. § 523(a)(2)(A)

■ Although ITT's complaint alleged causes of action under both 11 U.S.C. § 523(a)(2)(A) and (a)(2)(B), ITT did not argue its cause of action under 11 U.S.C. § 523(a)(2)(B) at trial or provide this Court with any evidence regarding this cause of action. Therefore, this Court will only consider ITT's allegations of a materially false representation under 11 U.S.C. § 523(a)(2)(A).

Section 523(a)(2)(A) provides that:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) ... a false representation ... other than a statement respecting the debtor's ... financial condition

The Sixth Circuit has interpreted this provision of the Bankruptcy Code as requiring the creditor to prove:

that the Debtor obtained money through a material misrepresentation that at the time the Debtor knew was false or made with gross recklessness as to its truth. The creditor must also prove the Debtor's intent to deceive. Moreover, the creditor must prove that it reasonably relied on the false representation and that its reliance was the proximate cause of the loss.

*Coman v. Phillips (In re Phillips)*, 804 F.2d 930, 932 (6th Cir.1986) (citations omitted).

■ ITT must prove its claim under 11 U.S.C. § 523(a)(2)(A) by the preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ Misstatements in collateral values totaling $24,000 appear to be material in a decision to extend credit of over $6,000.

Additionally, these misstatements seem to have been a result of grossly reckless behavior on the part of the Debtor. Though the Debtor testified that the values for items of collateral were provided by ITT, the Debtor displayed gross recklessness in reviewing and signing the Agreement which included a value of $4,000 for "Mechanics Tools" and a value of $20,000 for "Misc. Tools, Air Comp." which the Debtor acknowledges he never owned. This degree of gross recklessness by a debtor allows a court to infer that the debtor had the requisite intent to deceive. *Coman*, 804 F.2d at 933.

■ However, ITT has provided no evidence that it reasonably relied on the purported values of collateral listed on the Agreement. In deciding an action for non-dischargeability of a debt, a court " 'should not base its decision regarding discharge on whether it would have extended the loan' ". *Bank One, Lexington v. Woolum (In re Woolum)*, 979 F.2d 71, 76 (6th Cir. 1992) (quoting *Knoxville Teachers Credit Union v. Parkey*, 790 F.2d 490, 492 (6th Cir.1986) (citation omitted)). However, a bankruptcy court will not deny a discharge where the "[p]laintiff present[s] no evidence regarding the loan procedure followed in extending funds to [d]ebtors" or other evidence indicating reasonable reliance. *ITT Financial Services v. Enis (In re Enis)*, 149 B.R. 471, 474 (Bankr. N.D.Ohio 1992). ITT failed to produce any evidence of reasonable reliance. Indeed, the only testimony offered by ITT at trial was that of ITT employees who did not participate in the loan process. The testimony which was provided at trial did not describe, in even a cursory manner, the process used by ITT in deciding whether to approve a loan. Here, as in *Manufacturer's Hanover Trust Co. v. Ward (In re Ward)*, ITT did not provide evidence that it conducted "even the most superficial credit investigation". *Manufacturer's Hanover Trust Co. v. Ward (In re Ward)*, 857 F.2d 1082, 1083 (6th Cir.1988). Moreover, this Court agrees with the court in *Manufacturer's Hanover Trust Co.* that " '[f]rom the perspective of the bankruptcy proceeding, it is inequitable to reward a possibly imprudent creditor who failed to detect the debtor's misrepresentation by excepting her debt from discharge, while the debtor's other more prudent creditors have their claims evaluated collectively' ". *Manufacturer's Hanover Trust Co.*, 857 F.2d at 1084 (quoting Zeigler, The Fraud Exception to Discharge in Bankruptcy: A Reappraisal, 38 Stan.L.Rev. 891, 907–09 (Feb.1986)).

### Additional Arguments Raised By Plaintiff at Trial

■ ITT attempted to assert an alleged security interest in Debtors' Work Tools at trial though this alleged security interest was not asserted in ITT's complaint or its pretrial brief. This argument is meritless. The mere fact that the Debtor admitted possessing work tools of substantial value and the fact that the Agreement listed security of "Mechanics Tools" and "Misc. Tools, Air Comp." do not support a conclusion that the Debtor granted ITT a security interest in his Work Tools.

■ ITT further argued at trial that Debtor had failed to disclose a purported secured debt to Snap–On Tools on his bankruptcy schedules. However, a bare admission by the Debtor that he did not list a secured debt to Snap–On Tools in his bankruptcy schedules will not justify this Court in excepting this debt to ITT from discharge.

### Return of Plaintiff's Collateral

■ This Court has previously noted that the Agreement lists a number of items as collateral for the debt from Debtor to ITT. This collateral includes a television, VCR, rifles, a stereo, "kids bikes", a riding mower and the Debtor's tools used in his home workshop. The Debtor has acknowledged that this property represents collateral for the debt to ITT and has agreed to turn this property over to ITT. However, this Court finds it important to note that the Agreement disclaims any non-purchase money security interest in "one television" where a borrower has obtained a personal loan. *See* Joint Exhibit 1, Disclosure Statement, Note and Security Agreement, Sec-

tion c., Exclusions. Thus, ITT cannot claim an interest in Debtor's television. Additionally, the Debtor testified that the riding mower listed as collateral for this loan had "blown up" and was no longer in his possession. However, ITT is entitled to the return of collateral including the VCR, rifles, stereo, "kids bikes" and the Debtor's tools used in his home workshop.

**Attorney Fees**

 This Court finds that Debtor should not be awarded attorney fees under 11 U.S.C. § 523(d) because ITT's claim was substantially justified. One bankruptcy court which has surveyed the case law under 11 U.S.C. § 523(d) has noted that a creditor's claim may not be held to be substantially justified where the creditor has failed to establish any of the necessary elements of its claim. *Norwest Financial Ohio, Inc. v. West (In re West)*, 108 B.R. 157, 164 (Bankr.S.D.Ohio 1989) (citations omitted). However, this case is more closely analogous to the facts in *Norwest Financial Ohio, Inc.*, where the court held that:

> [a]lthough the creditors did not prevail on the merits of their claims, it appears to the [c]ourt that the creditors had a sound basis for bringing these suits, acted in good faith, and were not guilty of abusive practices in obtaining a false statement.

*Norwest Financial Ohio, Inc.*, 108 B.R. at 164 (citing 3 Collier on Bankruptcy, Para. 523.12, 523-74 (15th ed. 1989)). Despite the fact that ITT did not prove reasonable reliance on the value of Debtor's collateral listed in the Agreement, ITT did prove that there were material misstatements in the value of the collateral which the Debtor reviewed and signed with gross recklessness. Thus, an award of attorney fees to Debtor is not appropriate.

## CONCLUSION

Therefore, this Court finds that ITT did not reasonably rely on the alleged misstatements by the Debtor. Thus, the Debtor will not be denied a discharge because of the alleged misstatements. However, the Debtor should surrender the collateral listed in the Agreement to ITT.

In light of the foregoing, it is

ORDERED that the debt due plaintiff ITT Financial Services from Debtor Eugene Schoenlein be, and hereby is, discharged. It is further

ORDERED that plaintiff's complaint to determine dischargeability of debt be, and hereby is, dismissed. It is further

ORDERED that Eugene Schoenlein shall surrender to ITT items including the VCR, rifles, stereo, "kids bikes" and the tools used by the Debtor in his home workshop.